1  WALTER K. OETZELL (State Bar No. 109769)
   *woetzell@dgdk.com*
2  ZEV SHECHTMAN (State Bar No. 266280)
   *zshechtman@dgdk.com*
3  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   1900 Avenue of the Stars, 11th Floor
4  Los Angeles, California 90067-4402
   Telephone:   (310) 277-0077
5  Facsimile:   (310) 277-5735

6  Attorneys for Plaintiff Brad D. Krasnoff, Chapter
   7 Trustee
7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                  **LOS ANGELES DIVISION**

| | |
|---|---|
| 11  In re | Case No. 2:17-bk-17975-BR |
| 12  HADLEY COLLISION CENTER, INC., | Chapter 7 |
| 13              Debtor. | |
| 14 | Adv. No. _____ |
| 15  BRAD D. KRASNOFF, CHAPTER 7 TRUSTEE, | **TRUSTEE'S COMPLAINT FOR:** <br> **(1) ) AVOIDANCE AND RECOVERY OF POST-PETITION TRANSFERS;** |
| 16              Plaintiff, | **(2) CONVERSION;** <br> **(3 TURNOVER;** |
| 17      vs. | **(4) DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY;** |
| 18  F M G, Inc. dba HADLEY TOW, a California Corporation; | **(5) BREACH OF WRITTEN CONTRACT;** <br> **(6) CONTRACTUAL INDEMNITY;** |
| 19  MARK HASSAN, an individual; <br> ANDREY GARIBYAN, an individual; | **(7) CONTRIBUTION; AND** <br> **(8) BREACH OF CONTRACT** |
| 20  and DOES 1-50, | **[PERSONAL GUARANTY]** |
| 21              Defendants. | |
| 22 | Date:    See Summons |
| 23 | Time:    See Summons <br> Ctrm.:    See Summons |

24      PLAINTIFF BRAD D. KRASNOFF, solely in his capacity as the Chapter 7 trustee

25  ("Plaintiff" or "Trustee") for the bankruptcy estate of HADLEY COLLISION CENTER, INC.(the

26  "Debtor"), alleges as follows:

27

28

1465006.4  1717975A                              1

## JURISDICTION AND CASE BACKGROUND

1.      This Court has jurisdiction over this Adversary Proceeding (this "Action") pursuant to 28 U.S.C. §§ 157 and 1334.  This Action is commenced pursuant to 11 U.S.C. §§ 105(a), 362, 541, 542, and 549, Rule 7001 of the Federal Rules of Bankruptcy Procedure, as well as other applicable law.  This Action is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E) and (O). This Action arises in a case under Chapter 7 of Title 11 of the United States Code entitled In re Hadley Collision Center, Inc., which has been assigned case number 2:17-bk-17975-BR (the "Bankruptcy Case") and is pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division (this "Court").  Plaintiff consents to the entry in this Action of final orders and judgment by this Court.

## THE PARTIES

2.      Plaintiff brings this Action solely in his capacity as the Chapter 7 Trustee for the bankruptcy estate of Hadley Collision Center, Inc. (the "Estate").

3.      Plaintiff is informed and believes, and based thereon alleges, that Debtor HADLEY COLLISION CENTER, INC. at all times relevant herein was and is a California corporation doing business in the County of Los Angeles.

4.      Plaintiff is informed and believes, and based thereon alleges, defendant F M G, Inc. dba HADLEY TOW ("FMG") at all times relevant herein was and is a California corporation doing business in the County of Los Angeles.

5.      Plaintiff is informed and believes, and based thereon alleges, defendant MARK HASSAN ("Hassan") at all relevant times herein was and is an individual residing or doing business in the County of Los Angeles.

6.      Plaintiff is informed and believes, and based thereon alleges, that defendant ANDREY GARIBYAN ("Garibyan") at all times relevant herein was and is an individual residing or doing business in the County of Los Angeles.

7.      The true names and/or capacities, whether individual, corporate, associate or otherwise, that Plaintiff designated as Does 1 to 50, inclusive, are unknown to Plaintiff, who

therefore sues said Defendants by such fictitious names. The above named defendants and Does 1 to 50, are referred to collectively herein as "Defendants." Plaintiff will seek leave to amend this complaint when the true names and/or capacities of said Defendants have been ascertained. Plaintiff is informed and believes and thereon alleges, that each of Defendants designated herein by such fictitious names is responsible in some manner for the occurrences alleged in this Complaint, and are legally obligated to Plaintiff for the reasons stated herein.

## GENERAL ALLEGATIONS

**The Debtor and FMG**

8.    On or about June 29, 2017 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of title 11 of the United States Code. Brad D. Krasnoff thereafter accepted appointment as the Chapter 7 Trustee for the Debtor's estate and continues to serve in that capacity for the benefit of the estate and its creditors.

9.    Plaintiff is informed and believes, and based thereon alleges, that the Debtor, at all relevant times, operated as an automotive collision repair business.

10.    Plaintiff is informed and believes, and based thereon alleges, that FMG, at all relevant times, operated as an automotive towing business.

11.    Plaintiff is informed and believes, and based thereon alleges, that, at all relevant times, Hassan was and is a shareholder, owner, and person in control of the Debtor and caused the Debtor to be incorporated on or about May 31, 2006.

12.    Plaintiff is informed and believes, and based thereon alleges, that, at all relevant times, Hassan was an officer of the Debtor.

13.    Plaintiff is informed and believes, and based thereon alleges, that, at all relevant times, Hassan was and is a shareholder, owner, and person in control of FMG.

14.    Plaintiff is informed and believes, and based thereon alleges, that, at all relevant times, Hassan was an officer, director, and agent for service of process of FMG.

15.    Plaintiff is informed and believes, and based thereon alleges, that, at all relevant times, Garibyan was and is a shareholder, owner, and person in control of the Debtor.

1      16.    Plaintiff is informed and believes, and based thereon alleges, that, at all relevant

2  times, Garibyan was an officer, director, and agent for service of process of the Debtor.

3

4  **Debtor's Unauthorized Operation and Post-Petition Insurance Payments**

5      17.    Plaintiff is informed and believes, and based thereon alleges, that on or after the

6  Petition Date Garibyan, Hassan, the Debtor, and each of them, continued to operate the Debtor's

7  business without the authorization of the Bankruptcy Court or applicable law.

8      18.    Plaintiff is informed and believes, and based thereon alleges, that on or after the

9  Petition Date Garibyan, Hassan, and FMG received payments and other funds for services and

10  products provided or sold by Debtor (the "Post-Petition Revenue").

11      19.    Plaintiff is informed and believes, and based thereon alleges, that on or after the

12  Petition Date Garibyan, Hassan, the Debtor, and each of them, obtained and transferred, caused to

13  be transferred, or allowed to be transferred certain payments made to the Estate by various

14  insurance companies, including, without limitation, the instruments constituting such payments or

15  by which such payments were made (the "Insurance Payments"), to FMG and FMG deposited the

16  same in its account.

17      20.    Notwithstanding demand for the same, neither the Post-Petition Revenue nor the

18  Insurance Payments have been turned over to the Trustee.

19

20  **The Staff Leasing Agreement**

21      21.    On or about February 1, 2014, the Debtor and FMG entered into a Staff Leasing

22  Agreement (the "Agreement"), a copy of which is attached hereto as Exhibit "1," which Agreement

23  was unexpired as of the Petition Date.  Plaintiff is informed and believes, and based thereon

24  alleges, that the Agreement is the Employee Leasing Agreement listed in the Debtor's Schedule G.

25      22.    Plaintiff is informed and believes, and based thereon alleges, that pursuant to the

26  Agreement, the Debtor served as the employer, for hundreds of tow truck drivers who were

27  "leased" or assigned to perform services for FMG, the towing company.

28      23.    The Agreement contained the following terms among others:

1       a.    Debtor and FMG jointly employed certain employees (the "Assigned

2  Employees").

3       b.    FMG was to maintain and provide to Debtor at the end of each pay period,

4  complete and accurate records of the actual time worked by each Assigned Employee and

5  warranted that all time cards and other payroll records submitted to Debtor shall be complete and

6  accurate.

7       c.    The Debtor was responsible for the payment of wages or other compensation

8  of the Assigned Employees while they were assigned to FMG.

9       d.    The Debtor was to deduct and remit to the proper taxing authorities, all local,

10  state and federal taxes required of an employer as respects the Assigned Employees.

11       e.    FMG was to promptly reimburse the Debtor for any and all amounts paid to,

12  or on behalf of the Assigned Employees, even if the Debtor is required by law to make such

13  payments.

14       f.    FMG was to pay Debtor for all services rendered.

15       g.    FMG was not to direct, request, or permit the Assigned Employees to work

16  any unreported hours.

17       h.    FMG retained sole responsibility for the direction and control of Assigned

18  Employees necessary to conduct FMG's business, discharge any duty, or comply with any

19  licensure, regulatory, or statutory requirements or acts, errors, and omissions of Assigned

20  Employees within the scope of FMG's business.

21       i.    FMG was to comply with all requirements of the National Labor Relations

22  Act and the National Labor Relations Board and assumed all liability for wrongful termination/

23  employment practices, compliance with the Fair Labor Standards Act, and proper reporting of all

24  hours worked.

25       j.    FMG agreed to indemnify the Debtor from any and all claims, demands,

26  causes of action, suits, liabilities, damages, punitive damages and expenses (including court costs

27  and attorney's fees) of any kind and character.

28       k.    The Debtor may increase its service fee if the Debtor receives an increase in

payroll rates or taxes—employee or employer—that Debtor is required to pay under local, state, or federal law.

l.    The Debtor may increase its service fee if the Debtor incurs additional or increased expenses from third parties, including, without limitation, workers' compensation insurance, liability insurance, among other things.

m.    If FMG defaults on any payment or fee incurred under the Agreement, the Debtor shall have the right to obtain a judgment against FMG for the amount owed and shall obtain a security interest in all of FMG's accounts, chattel paper, documents and instruments, general intangible goods, equipment, and inventory.

n.    The prevailing party in any litigation to enforce the Agreement is entitled to attorneys' fees and costs incurred in such action from the unsuccessful party.

24.    Mark Hassan and Andrey Garibyan signed a personal guaranty of FMG's obligations under the Agreement to Debtor (the "Guaranty").

**Liabilities of FMG under the Staff Leasing Agreement**

25.    On January 8, 2018, the Internal Revenue Service ("IRS") filed its amended Claim No. 1 against the Debtor alleging tax liabilities owed by the Debtor totaling $1,811,963.99.

26.    Plaintiff is informed and believes, and based thereon alleges, that the funds claimed owed to the IRS are primarily on account of payroll taxes for the period from July 1, 2016 to June 30, 2017 for the Assigned Employees under the Agreement.

27.    On September 28, 2017, the Employee Development Department ("EDD") filed its Claim No. 4 against the Debtor alleging tax liabilities owed by the Debtor totaling $269,405.15.

28.    Plaintiff is informed and believes, and based thereon alleges, that the funds claimed owed to the EDD are primarily on account of payroll taxes for the period from July 1, 2016 to June 29, 2017 for the Assigned Employees under the Agreement.

29.    On October 9, 2017, Edwin Rogers and Travis Porter, on behalf of themselves and all others similarly situated (collectively, "Rogers"), filed Claim No. 6 against the Debtor alleging liabilities of not less than $6,600,000 on account of wage and hour class action claims, among other

1    employment related claims, of truck drivers (the "Rogers Claim").

2        30.     Plaintiff is informed and believes, and based thereon alleges, that the Rogers Claim

3 arises from liabilities incurred due to acts or omissions by FMG with respect to the Assigned

4 Employees under the Agreement.

5        31.     Plaintiff is informed and believes, and based thereon alleges, that there are

6 additional liabilities and obligations and obligations owed Debtor by FMG under or by virtue of

7 FMG's acts and omissions in respect of the Agreement.

8        32.     By his December 4, 2017 letter to Hassan and to FMG, the Trustee demanded

9 payment on account of all liabilities arising under the Agreement.

10

11                          **FIRST CLAIM FOR RELIEF**

12                 (For Avoidance and Recovery of Unauthorized
   Post-Petition Transfers – 11 U.S.C. §§ 549 and 550)

13

14                      (Against All Defendants)

15        33.     Plaintiff refers to and incorporates herein by this reference each and every allegation

16 contained in paragraphs 1 through 32, inclusive, hereof as though fully set forth herein.

17        34.     Any and all property and transfers of any property of the Debtor, including, without

18 limitation, payments and other funds for services and products provided or sold by Debtor after the

19 Petition Date, the Post-Petition Revenue, and the Insurance Payments (collectively, the "Post-

20 Petition Transfers") are avoidable and recoverable from Garibyan, Hassan, FMG, and each of them,

21 pursuant to 11 U.S.C. §§ 549 and 550.

22

23                        **SECOND CLAIM FOR RELIEF**

24                         (For Conversion)

25                     (Against All Defendants)

26        35.     Plaintiff refers to and incorporates herein by this reference each and every allegation

27 contained in paragraphs 1 through 34, inclusive, hereof as though fully set forth herein.

28        36.     Plaintiff is informed and believes and thereon alleges that at all times relevant

1    herein, Plaintiff possessed and was entitled to immediate enjoyment of that certain personal

2    property consisting, inter alia, of the Post-Petition Transfers.

3         37.     Plaintiff is informed and believes and thereon alleges that beginning on the Petition

4    Date and thereafter Garibyan, Hassan, FMG, the Debtor, and each of them, obtained and

5    transferred, caused to be transferred, or allowed to be transferred to FMG, and converted to their

6    own possession and use, the Post-Petition Transfers.

7         38.     Plaintiff is informed and believes and thereon alleges that the value of said personal

8    property at or about the time of said conversion had a value of not less than $100,000.

9         39.     Plaintiff has demanded the immediate return of said personal property, but

10    Defendants have failed and refused to return said personal property to Plaintiff thus denying to

11    Plaintiff its possession and use.

12         40.     Plaintiff is informed and believes and thereon alleges that the acts as alleged above

13    were malicious, oppressive, and done with willful disregard of the rights of Plaintiff justifying the

14    award of punitive or exemplary damages.

15

16                                **THIRD CLAIM FOR RELIEF**

17                             (For Turnover – 11 U.S.C. § 542)

18                            (Against All Defendants)

19         41.     Plaintiff refers to and incorporates herein by this reference each and every allegation

20    contained in paragraphs 1 through 40, inclusive, hereof as though fully set forth herein.

21         42.     Plaintiff is informed and believes, and based thereon alleges, that the Post-Petition

22    Transfers are property of the estate.

23         43.     Pursuant to 11 U.S.C. § 542, the Plaintiff is entitled to the turnover of all the Post-

24    Petition Transfers from the Defendants.

25

26

27

28

1465006.4  1717975A                            8

## FOURTH CLAIM FOR RELIEF

(For Violation of Automatic Stay – 11 U.S.C. § 362)

(Against All Defendants)

44.    Plaintiff refers to and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 43, inclusive, hereof as though fully set forth herein.

45.    The taking control and transfer of the property of the estate, including, without limitation, the Post-Petition Transfers above by Garibyan, Hassan, and FMG, constitute knowing, willful, and intentional violations of the automatic stay under 11 U.S.C. § 362, which caused actual damages to the Estate.

## FIFTH CLAIM FOR RELIEF

(For Breach of Written Contract)

(Against FMG)

46.    Plaintiff refers to and incorporates herein by this reference each and every allegation contained in paragraphs 1 through 45, inclusive, hereof as though fully set forth herein.

47.    The Agreement is a written contract between the Debtor and FMG.

48.    The Debtor performed or is excused from performance of all conditions, covenants, and promises required of Debtor under the Agreement, excepting those excused by applicable law.

49.    FMG has breached the Agreement by, among other things, failing to pay tax claims and employment related liabilities in respect of the Assigned Employees and/or failing to reimburse the Debtor on account of such claims.

50.    As a result of the breach by FMG, Debtor has been harmed in an amount to be proved at trial, but not less than $9,000,000.

## SIXTH CLAIM FOR RELIEF

(For Contractual Indemnity)

(Against FMG)

51.    Plaintiff refers to and incorporates herein by this reference each and every allegation

1  contained in paragraphs 1 through 50, inclusive, hereof as though fully set forth herein.

2      52.    The Agreement is a written contract between the Debtor and FMG.

3      53.    The Debtor performed or is excused from performance of all conditions, covenants,

4  and promises required of Debtor under the Agreement, excepting those excused by applicable law.

5      54.    The Debtor has become liable for claims, or has incurred damages, totaling not less

6  than $9,000,000 for which FMG is liable under the Agreement.

7

8  **SEVENTH CLAIM FOR RELIEF**

9  (For Contribution)

10  (Against FMG)

11      55.    Plaintiff refers to and incorporates herein by this reference each and every allegation

12  contained in paragraphs 1 through 54, inclusive, hereof as though fully set forth herein.

13      56.    FMG has failed and refused and continues to fail and refuse to contribute its share of

14  the obligations arising from claims of the Leased Employees, including, without limitation, those

15  set forth in the Rogers Claim and others.

16

17  **EIGHTH CLAIM FOR RELIEF**

18  (For Breach of Contract – Personal Guaranty)

19  (Against Mark Hassan and Andrey Garibyan)

20      57.    Plaintiff refers to and incorporates herein by this reference each and every allegation

21  contained in paragraphs 1 through 56, inclusive, hereof as though fully set forth herein.

22      58.    Plaintiff is informed and believes and thereon alleges, that Mark Hassan and Andrey

23  Garibyan have defaulted under and breached the terms of the Guaranty, including without

24  limitation, their failure to pay the amounts of FMG's liabilities and obligations required thereby.

25      59.    Said breach has resulted in damages to the Estate to be proved at trial, in an amount

26  not less than $9,000,000, plus interest and attorneys' fees.

27

28

1465006.4  1717975A                             10

WHEREFORE, the Plaintiff prays for judgment as follows:

ON THE FIRST CLAIM FOR RELIEF:

      1.      That the Post-Petition Transfers be avoided;

      2.      That the Post-Petition Transfers or the respective value thereof be recovered from each of the recipients of the transfer for the benefit of this estate; and

      3.      For interest thereon from the respective date of receipt of each of the Post-Petition Transfers.

ON THE SECOND CLAIM FOR RELIEF:

      4.      For money damages as proved at trial and

      5.      For exemplary or punitive damages.

ON THE THIRD CLAIM FOR RELIEF:

      6.      For a judgment against all Defendants requiring turnover of the Post-Petition Transfers or other property of the estate to the Trustee.

ON THE FOURTH CLAIM FOR RELIEF:

      7.      For money damages against all Defendants in a sum to be proved at trial and

      8.      For interest thereon from the date of the Post-Petition Transfers.

ON THE FIFTH CLAIM FOR RELIEF:

      9.      For money damages as proved at trial;

      10.      For interest thereon from the date of breach; and

      11.      For attorneys' fees and costs.

ON THE SIXTH CLAIM FOR RELIEF:

      12.      For money damages as proved at trial;

1       13.     For interest thereon from the date of breach; and

2       14.     For attorneys' fees and costs.

3

4 ON THE SEVENTH CLAIM FOR RELIEF:

5       15.     For a determination by the Court of the amount of contribution to be paid by

6 Defendant.

7

8 ON THE EIGHTH CLAIM FOR RELIEF:

9       16.     For money damages as proved at trial;

10      17.     For interest thereon from the date of breach; and

11      18.     For attorneys' fees and costs.

12

13 ON ALL CLAIMS FOR RELIEF:

14      19.     Money damages in an amount to be proven at trial, but not less than $9,100,000;

15      20.     For costs of suit;

16      21.     For all applicable interest;

17      22.     For all attorneys' fees and expenses; and

18      23.     For all other and further relief as the Court deems just and proper.

19

20 DATED: March _9_, 2018         DANNING, GILL, DIAMOND & KOLLITZ, LLP

21

22                By: _____

23                   WALTER K. OETZELL

24                   ZEV SHECHTMAN
                      Attorneys for Plaintiff Brad D. Krasnoff, Chapter 7

25                   Trustee

26

27

28

# EXHIBIT "1"

## STAFF LEASING AGREEMENT

*Upon the parties' voluntarily entering into this Staff Leasing Agreement (hereinafter "Agreement") for the joint employment of labor entered into and effective upon the date specified herein, between Hadley Collision Center Inc. and FMG Inc. located at 11819 Hadley St. Whittier, CA 90601.Telephone # 562-692-3793, the parties hereby agree that the following provisions shall be binding:*

*This Agreement shall be effective on 01/02/2014. The initial term of this Agreement shall be one (1) year from the date of execution, and will be automatically renewable for successive one (1) year terms. After the expiration of the initial term, either party may terminate this agreement upon written notice to the other party. The termination date shall be the date of receipt of written notice by the other party. Furthermore, by written notice, either party may terminate this Agreement immediately upon any material breach by the other party. The termination date shall be the date on which the breach occurred.*

### Business Intentions

Hadley Collision Center Inc. and Client agree to jointly employ certain employees (hereinafter "Assigned Employees").Hadley Collision Center Inc. agree to undertake employer responsibilities as allocated by this Agreement. Hadley Collision Center Inc. agrees to provide Client with only those services identified in this Agreement. Hadley Collision Center Inc. is not obligated to provide any additional consultation services. Any additional consultation services requested would be governed by an entirely separate written agreement.

During the term of this Agreement, Hadley Collision Center Inc. shall be responsible for payment of wages or other compensation to the Assigned Employees while they are assigned to Client. Hadley Collision Center Inc. shall deduct and remit to the proper taxing authority all local, state and federal taxes required of an employer. Based on and in reliance on information provided by Client, Hadley collision Center Inc. shall maintain payroll and other wage, benefit and tax records related to the Assigned Employees.

Client shall pay Hadley Collision Center Inc. for all services rendered. Client agrees to promptly reimburse Hadley Collision Center Inc. for any and all amounts paid to, or on behalf of the Assigned Employees, even if Hadley Collision Center Inc. is required by law to make such payments.

Hadley Collision Center Inc. will provide Client with a detailed invoice at the end of each pay period covered by this agreement for all compensation paid to or on behalf of Assigned Employees in accordance with the Client's schedule.

_____ Page 1 of 12 initial here

## STAFF LEASING AGREEMENT

*Upon the parties' voluntarily entering into this Staff Leasing Agreement (hereinafter "Agreement") for the joint employment of labor entered into and effective upon the date specified herein, between Hadley Collision Center Inc. and FMG Inc. located at 11819 Hadley St. Whittier, CA 90601.Telephone # 562-692-3793, the parties hereby agree that the following provisions shall be binding:*

*This Agreement shall be effective on 01/02/2014. The initial term of this Agreement shall be one (1) year from the date of execution, and will be automatically renewable for successive one (1) year terms. After the expiration of the initial term, either party may terminate this agreement upon written notice to the other party. The termination date shall be the date of receipt of written notice by the other party. Furthermore, by written notice, either party may terminate this Agreement immediately upon any material breach by the other party. The termination date shall be the date on which the breach occurred.*

### Business Intentions

Hadley Collision Center Inc. and Client agree to jointly employ certain employees (hereinafter "Assigned Employees").Hadley Collision Center Inc. agree to undertake employer responsibilities as allocated by this Agreement. Hadley Collision Center Inc. agrees to provide Client with only those services identified in this Agreement. Hadley Collision Center Inc. is not obligated to provide any additional consultation services. Any additional consultation services requested would be governed by an entirely separate written agreement.

During the term of this Agreement, Hadley Collision Center Inc. shall be responsible for payment of wages or other compensation to the Assigned Employees while they are assigned to Client. Hadley Collision Center Inc. shall deduct and remit to the proper taxing authority all local, state and federal taxes required of an employer. Based on and in reliance on information provided by Client, Hadley collision Center Inc. shall maintain payroll and other wage, benefit and tax records related to the Assigned Employees.

Client shall pay Hadley Collision Center Inc. for all services rendered. Client agrees to promptly reimburse Hadley Collision Center Inc. for any and all amounts paid to, or on behalf of the Assigned Employees, even if Hadley Collision Center Inc. is required by law to make such payments.

Hadley Collision Center Inc. will provide Client with a detailed invoice at the end of each pay period covered by this agreement for all compensation paid to or on behalf of Assigned Employees in accordance with the Client's schedule.

Page 1 of 12 initial here

## Fees

Client shall pay an initial set up charge of $___0___.

Client shall pay to Hadley Collision Center Inc. a deductible of $ 500.00 per Workers' Compensation claim asserted by any Assigned Employee. Said deductible shall include any medical expense, income expense or any other expense incurred by Hadley Collision Center Inc. in the investigation and defense of any Workers' Compensation claim asserted by any Assigned Employee, including, but not limited to, attorney fees.

At any time during this Agreement, or any successive term, Hadley collision Center Inc. may increase its service fee upon the occurrence of any one or more of the following: **(1)** *In the event that Hadley Collision Center Inc. receives an increase in payroll rates or taxes-employee or employer, that Hadley Collision Center Inc. is required to pay under local, state or federal law,* **(2)** *In the event that Hadley Collision Center Inc. incurs additional and/or any increase in expenses from any third party services, including but not limited to Workers' Compensation insurance, liability insurance, auditing fees or other premium review charges. Those charges and/or increases shall be passed onto and shall be the sole responsibility of Client. Any increase will be billed to the Client as of the same effective date of the increase to Hadley collision Center Inc..*

Hadley collision Center Inc. May increase its service fee upon any increase in the Workers' Compensation insurance premiums charged to Hadley collision Center Inc. by its insurance carrier. The effective date of such increase shall be the date that Hadley collision Center Inc. is required by its carrier to begin paying such increased premiums. Such increases may include increases due to changes in the classification codes required by Hadley collision Center Inc. insurance carrier for the type of employee services being performed by the Assigned Employees. If the client has had no material Worker's Compensation claims, and has no financial obligations to Hadley collision Center Inc., client may terminate this contract with thirty (30) days written notice.

## Client Requirements

Client shall maintain, and shall provide to Hadley collision Center Inc. at the end of each pay period, complete and accurate records of actual time worked by each Assigned Employee. Client assumes full and unconditional responsibility for accurate and thorough payroll records submitted to Hadley collision Center Inc. Client warrants that all time cards or other payroll records submitted to Hadley collision Center Inc. shall be complete and accurate. Client shall not direct, request or permit the Assigned Employees to work any unreported hours. Such action shall be considered a material breach of this Agreement and is grounds for immediate termination of Client by Hadley collision Center Inc.

Client shall have the sole responsibility to safeguard valuable property, including but not limited to: cash, negotiable instruments, tools, equipment, intellectual property and trade secrets. Client shall have sole responsibility to take all steps necessary to prevent or safeguard against misappropriation or theft of such property by any Assigned Employee. Hadley collision Center Inc. shall have no duty to safeguard any property of Client. Hadley collision Center Inc. is not responsible for screening potential Assigned Employees, unless agreed to in a separate written document signed by all parties. Client accepts all risk that Assigned Employees may prove incompetent, untrustworthy or dishonest.

Page 2 of 12 initial here

Client retains full responsibility for: (1) *the direction and control of leased employees as necessary to conduct Client's business, discharge any duty, or comply with any licensure, regulatory or statutory requirements;* (2) *Client's goods and services; and* (3) *the acts, errors and omissions of leased employees committed within the scope of the Client's business.*

Client bears sole responsibility (1) *to ensure compliance with any law or regulation requiring an Assigned Employee to hold a license, to work only under the supervision of a licensed person, or to work only in the employment of an entity holding a license; and* (2) *for verifying that Assigned employees have any necessary licenses or permits, and for providing any required licensed supervision at no additional cost to Hadley collision Center Inc..*

Client shall require all independent contractors or subcontractors to maintain Workers' Compensation insurance and General Liability insurance. Client shall require each independent contractor or subcontractor to provide evidence of insurance and evidence of Worker's Compensation coverage prior to commencing work. Failure to comply with this paragraph shall result in no coverage for the independent contractor under Hadley collision Center Inc. Workers' Compensation Insurance and Client shall bear the sole cost and responsibility for any claim arising from the independent contractor's work. Client shall further secure an executed TWCC-83 from each independent contractor and file same with the appropriate worker's compensation carrier and with the Worker's Compensation Commission prior to the commencement of work by the independent contractor. Client shall require all independent contractors or subcontractors to endorse all of their policies of insurance to waive subrogation rights against Client and Hadley collision Center Inc. and name Client and Hadley collision Center Inc. and their agents as additional insureds on all such policies.

**Client agrees to indemnify, defend and hold harmless Hadley collision Center Inc., its affiliates and subsidiaries, their shareholders, employees, officers, directors, agents, and representatives, from any and all claims, demands, causes of action, suits, liabilities, damages, punitive damages and expenses (including court costs and attorney's fees) of every kind or character. Hadley collision Center Inc. shall have the right to select the attorneys by which it will be defended. All indemnity obligations and liabilities assumed by Client under this Agreement are without monetary limit and without regard to the cause or causes thereof or the negligence of any party or parties, including the negligence or gross negligence of Hadley collision Center Inc., whether the negligence is sole, assigned, comparative, concurrent, active or passive, ordinary or gross. The indemnification obligations under this agreement shall survive the expiration of this agreement or the termination or breach of this agreement by any party for any reason.**

Hadley collision Center Inc. shall not provide any benefits including, but not limited to, medical insurance to Assigned Employees. Client shall be solely responsible for obtaining, maintaining and paying any premiums or other costs for any benefits it chooses to provide to Assigned Employees at no additional cost to Hadley collision Center Inc.

Hadley collision Center Inc. shall not make, and the on-site supervisors are not authorized to make on behalf of Hadley collision Center Inc., any business related decisions on behalf of Client. All business decisions are the sole responsibility of Client. Any action taken by an on-site supervisor or by an Assigned Employee that is not taken at the express direction and authorization of Hadley collision Center Inc. corporate office shall be the sole responsibility of Client.

Page 3 of 12 initial here

Payment for each invoice is due immediately upon receipt by Client. Client shall remit payment of each invoice the earlier of either within 24 hours of the end of the pay period or within 24 hours of receipt of said invoice. Failure to comply may be considered a breach of this Agreement and may be grounds for immediate termination.

**LATE FEES**: If Client's payment is not received by Monday at 5pm of the following week, a 1.5% late fee will be included on the next week's invoice, unless previous arrangements have been made and approved in writing. Client acknowledges that non-payment entitles Hadley collision Center Inc. to immediately terminate this Agreement and the staffing, as well as the Client's insurance coverage and Certificates of Insurance.

**NSF CHARGES**: All NSF charges must be paid by certified check or bank wire within 24 hours of the notification of the NSF. The amount to be reimbursed to Hadley collision Center Inc. will be the amount of the NSF, plus an additional $50 NSF fee. If a second NSF occurs, a $300 NSF fee and 1.5% funding fee will be added to the NSF amount. This must be paid and collected within 24 hours. (As a result of these NSF charges, any future payments by the Client must now be submitted via certified funds.) If the second NSF is not paid and collected within 24 hours, a 3% fee will be added to the NSF amount. **Failure to resolve any NSF issues within 24 hours will result in immediate termination of services and all insurance coverage, regard less of any cancellation periods provided in any other documentation, and will be pursued to the fullest extent of the law, including damages and attorney fees.**

Client shall immediately reimburse Hadley collision Center Inc. for all fees and other charges, including attorneys' fees that Hadley collision Center Inc. incurs attributable to Client's failure to pay in accordance with this Agreement and shall owe interest on all late payments at a rate of 1.5%, from the date the payments were due, but not to exceed the maximum legal rate.

Client shall immediately upon termination of this Agreement for any reason, assume sole responsibility for all federal, state and local obligations of an employer with respect to such employees formerly considered Assigned Employees under this Agreement, including the obligation to provide Workers' Compensation coverage. Immediately upon termination of this Agreement for any reason, Hadley collision Center Inc. shall be released from such obligations. If for any reason (whether or not required by applicable law) Hadley collision Center Inc. pays any of the employees formerly defined as Assigned Employees for services rendered to Client after this Agreement has been terminated, Client shall tender full and immediate reimbursement for such expenditures, including all reasonable attorney fees.

Page 4 of 12 initial here

## Compliance

Client shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of person or property or their protection from damage, injury, or loss. Client shall provide, erect, and maintain, as required by conditions, performance of the contract, or law or regulation, safeguards for safety and protection. Client's responsibility includes, but is not limited to, liability for OSHA regulations, citations, and fines. Client shall also comply with all requirements of the National Labor Relations Act and the National Labor Relations Board, and assumes all liability for wrongful termination/employment practices, compliance with the Fair Labor Standards Act, and proper reporting of all hours worked. **When the accurate and complete time records of any worker provided hereunder are not timely furnished to Hadley collision Center Inc., said worker is the sole employee of Client for the time not properly reported to Hadley collision Center Inc.** This destroys co-employment and creates dual-employment, which voids insurance coverage.

Client agrees to provide Hadley collision Center Inc. with all of the required hiring paperwork **prior** to the start of any new staff. If the required paperwork is not provided prior to start, the individual in question will not become an employee of Hadley collision Center Inc. and will not be covered by worker's compensation insurance, and will entitle Hadley collision Center Inc. to terminate this contract as of the date of breach.

## Assigned Employees

Upon the execution of this Agreement, Client must provide the employment application and applicable documentation for each Assigned Employee. Upon the hiring of a new Assigned Employee by Client, Client shall fax to Hadley collision Center Inc. the Assigned Employee's employment application and applicable documentation and mail the original documents to Hadley collision Center Inc. within (7) seven days from the hire date.  Said new hire shall not be an Assigned Employee, nor will he/she be covered under Hadley collision Center Inc. Workers' Compensation insurance until such time as Hadley collision Center Inc. receives all applicable employee documentation, as described herein.

**Client agrees to provide a job for any employee assigned to Client Company that is injured and receives a light duty or full duty release, and the employee returns to Client Company's payroll.**
Hadley collision Center Inc. shall have the right to audit and review all documents regarding Assigned Employees' classification, job title, rate, benefits, position, etc. at any time, upon verbal or written request. Failure to comply with this shall constitute a material breach and shall be grounds for immediate termination of this Agreement.

Regarding Assigned Employees, Client shall have the sole responsibility for and shall fully comply with all local, state or federal law relating to equal employment opportunity and non-discrimination in employment. Hadley collision Center Inc. shall not be responsible for any action taken by Client with respect to the Assigned Employees.

Page 5 of 12 initial here

Client shall, on Hadley collision Center Inc. request: make available same or fully equivalent employment opportunities to any Assigned Employee eligible for reinstatement following leave under the Family & Medical Leave Act or any comparable law; and, provide reasonable accommodation under the Americans with Disabilities Act or any comparable law. Client shall bear the sole cost of providing leave, job reinstatement or a reasonable accommodation.

In order for Hadley collision Center Inc. to comply with its notice obligations under 29 U.S.C.A. §2102, Client shall give Hadley collision Center Inc. not less than ninety (90) days advance written notice of: **(1)** *any temporary or permanent shutdown of any facility, site of employment or employment unit; or* **(2)** *any reduction in force resulting in the layoff of one-third or more of the persons (counting Client employees, Assigned Employees or both) working at any single facility, site of employment or employment unit of Client.*

On the termination of this Agreement by any party for any reason, in accordance with California Labor Code, Client shall, within 15 days, notify each Assigned Employee that this Agreement has been terminated, and that their employment relationship with Hadley collision Center Inc. has been terminated. In addition, Hadley collision Center Inc. shall have the right to, but not the obligation to; notify the Assigned Employees that their employment relationship with Hadley collision Center Inc. has been terminated.

## Breach or Default

Client understands and acknowledges that should Client default on any payment of fees described in this Agreement, that Hadley collision Center Inc. shall have the right to immediately terminate the Agreement. Termination shall be effective upon written notice to Client.

Furthermore, should Client default on any payment or fee incurred under this Agreement, Hadley collision Center Inc. shall have the right to obtain a Judgment against Client for amount owed and shall obtain a security interest in all of Client's accounts, chattel paper, documents and instruments, general intangibles goods, consumer foods, equipment, farm products and inventory in accordance with the attached Guaranty. This security interest shall apply to all such assets of Client whether now owned, or hereafter acquired. Such a Judgment and security interest would be obtained in order to secure the full payment of, but not limited to, Client's obligations to Hadley collision Center Inc. under this Agreement, under any renewals, modifications or extension of this Agreement.

Hadley collision Center Inc. shall have all rights and remedies granted a secured party under the Uniform Commercial Code as adopted in Texas.

**Page 6 of 12 initial here**

## Worker's Compensation and Other Insurance

As required by statute, Hadley collision Center Inc. shall maintain a policy providing Workers' Compensation benefits. Client shall notify Hadley collision Center Inc. before employing any of the Assigned Employees outside of the State of California. Such notification shall comply with the requirements listed under the section labeled "Assigned Employees" of this Agreement.

Client shall maintain commercial general liability insurance coverage, including without limitation, products and completed operations coverage, independent contractor's protective coverage, contractual liability coverage for this agreement, and broad form property damage, and including coverage for explosion, collapse, and underground property damage hazards applicable to all of Client's operations and job sites. Such insurance shall provide limits not less than one million dollars ($1,000,000.00) per occurrence for injury, including contractual liability and advertising injury and two million dollars ($2,000,000.00) general aggregate for bodily injury, including death resulting there from, personal injury and property damage. Such policy shall provide coverage for the acts or omissions of the Assigned Employees and/or any agents of Hadley collision Center Inc. Client shall provide Hadley collision Center Inc. with a Certificate of Liability, verifying coverage.

Client shall maintain business automobile insurance, including hired, owned and non-owned automobiles, against bodily injury, including death resulting there from, with limits of one million dollars ($1,000,000.00) per occurrence combined single limit. Such policy shall provide coverage applicable to the use or operation of vehicles by the Assigned Employees.

Client shall maintain a policy of Workers' Compensation insurance for all employees of Client, other than Assigned Employees. Such policy shall provide coverage sufficient to satisfy the minimum requirements in the state in which the employees are working.

With respect to each policy of insurance required in this Agreement, the following shall be completed prior to the execution of this Agreement. Client shall **(1)** *Endorse all of its policies of insurance to waive subrogation rights against Hadley collision Center Inc.* **(2)** *Name Hadley collision Center Inc. and its agents as an additional insured on all policies other than Client's Workers' Compensation insurance policy. Any policy of Workers' Compensation insurance maintained by Client shall be*

Page 7 of 12 initial here

*Endorsed to name Hadley collision Center Inc. as an alternate employer;* **(3)**
*Provide Hadley collision Center Inc. 30 (thirty) days advance written notice of cancellation, lapse, material change or reduction in coverage;* **(4)** *Client shall maintain all insurance required by this Agreement continuously and without lapse or break in coverage. Client's failure to continuously maintain all required insurance shall constitute a material breach of this Agreement and be grounds for immediate termination of this Agreement by Hadley collision Center Inc.*

## Safety

Client shall be solely responsible for maintaining safe work environments for Assigned Employees, in full compliance with all Occupational Safety & Health Act and all Federal and/or State regulations. Client, at its sole expense, shall perform any necessary safety inspections and/or modifications, as well as furnish to the Assigned Employees personal protective equipment, safety equipment and training required under any local, state or federal law, regulation or ordinance. Client shall implement all reasonable safety recommendations necessary to comply with all applicable state and federal regulations and to comply with industry standards. Client shall promptly comply with all requirements or directives of OSHA, any local, state or federal agency or Hadley collision Center Inc. insurance carriers. Client agrees that it shall be solely responsible for any OSHA citations or violations, including any attributable to the acts or omissions of Assigned Employees. Client shall immediately notify Hadley collision Center Inc. of any unsafe conditions at any location where Assigned Employees are performing services on behalf of Client.

Hadley collision Center Inc. and/or its insurers shall have the right, but not the duty, to inspect the premises of Client or any job site where Assigned Employees are employed, and retain the use of safety consultants and/or industrial hygienists in connection with such inspections, and to make recommendations pertaining to job safety. Such inspections and recommendations provided by Hadley collision Center Inc. are solely for the purpose of assisting Client in connection with safety matters and shall not relieve Client of its responsibilities for safety matters provided for herein. Hadley collision Center Inc. shall not be obligated to prepare site or job specific safety plans or to perform regular safety inspections at sites where client has placed Assigned Employees. Hadley collision Center Inc. safety obligations are limited to general and global safety requirements.

**CLIENT AGREES TO DEFEND, INDEMNIFY AND HOLD HARMLESS HADLEY COLLISION CENTER INC., ITS AGENTS AND ITS INSURERS FOR ANY EXPENSES AND/OR DAMAGES INCURRED, INCLUDING BUT NOT LIMITED TO WORKER'S COMPENSATION BENEFITS, DAMAGES OR FINES AND PUNITIVE DAMAGES WHICH ARE THE RESULT OF CLIENT'S FAILURE TO IMPLEMENT ANY REASONABLE SAFETY SUGGESTIONS PROVIDED BY HADLEY COLLISION AND/OR ITS INSURER.**

Hadley collision Center Inc. reserves the right to fully and independently inspect any and all incidents, accidents and/or injuries which involve either directly or peripherally any Assigned Employees. Any documents and/or reports generated as a result of such an investigation will be generated in anticipation of litigation and shall, therefore, be privileged information belonging exclusively to Hadley collision Center Inc.

Page 8 of 12 initial here

## Additional Provisions

The headings in this Agreement are intended for convenience or reference and shall not affect its interpretation.

The provisions of this Agreement shall be binding upon the parties and their respective agents, employees, directors, officers, shareholders, heirs, executors, administrators, legal representatives, successors and assigns. Assigned Employees are not third party beneficiaries of this Agreement and shall have no right to enforce this Agreement. The failure of either party to insist upon strict performance of any of the provisions of this Agreement shall in no way constitute a waiver of any of its rights as set forth herein, at law or equity, or a waiver by either party of any other provision or subsequent default by the other in the performance of or compliance with any of the terms and conditions set forth herein.

Each section of this Agreement is sever-able and should any section of this Agreement, or any portion thereof, be held invalid, illegal or unenforceable, the remainder of this Agreement shall remain valid, legal and enforceable.

If legal actions or other proceedings are brought for the enforcement of this Agreement or because of an alleged breach, default or misrepresentation in connection with the provisions hereof, the prevailing party shall be entitled to recover its reasonable and necessary attorney's fees and other costs incurred in such action or proceeding from the unsuccessful party, in addition to any other relief to which it may be entitled.

By entering into this Agreement, Client expressly warrants that it is presently not in bankruptcy and neither has any intention of filing for bankruptcy protection nor any reason to believe that it will need to seek bankruptcy protection. This agreement shall be interpreted so as to comply with all applicable laws and shall be amended, if necessary as required by any such governmental agency or bankruptcy court.

Page 9 of 12 initial here

## Regulation and Jurisdiction

This Agreement shall be binding, governed by, and construed and enforced under the laws of California and of the United States.

The parties hereby agree that venue for any dispute between the parties, arising out of this Agreement shall be Los Angeles County, California.

To be effective, any notice given under this Agreement must be in writing and shall be effective when received.   Notice shall be given to the address given in this Agreement.

**This agreement may not be modified in any way except by a single written agreement signed by both parties. All Persons executing this agreement warrant that they are authorized to do so for their respective party. <u>Please provide a copy of your Driver's License for identification purposes only.</u>**

Executed this 01 day of February 2014.

_____ Page 10 of 12 initial here

## PERSONAL GUARANTY

On this date, February 1 2014 I, Andrey Garibyan, in consideration for Hadley Collision Center Inc., entering in to the attached Staff Leasing Agreement with FMG Inc., have signed this Personal Guaranty. I further attest that I have a substantial interest in Client and in seeing that Hadley collision Center Inc. provides its services to Client.

By the signing of this document, I am personally and individually guaranteeing Client's performance of all terms and conditions contained in the attached Staff Leasing Agreement. This guarantee extends to and includes obligations or debts incurred by Client in the future as related to the attached Staff Leasing Agreement, including but not limited to, the payment of all fees, costs, charges and expenses incurred by Client, including attorney's fees and costs of collection.

I further understand and agree that this guarantee is unconditional and unlimited. I waive any notice of default, dishonor or acceleration. I understand and agree that I am obligated to fulfill this guarantee without regard to whether suit has been filed or a judgment has been obtained against Client.

The bankruptcy of Client will not operate to reduce or relieve any obligation under this Agreement. Part payment by Client or any other guarantor will not reduce my obligations under this Agreement. My obligations as Guaranty under this Agreement will not be reduced or waived by any settlement or release entered into with Client or any other guarantor.

By virtue of execution of this document and the attached Staff Leasing Agreement, Guarantor hereby grants Hadley Collision Center Inc. a security interest in and to all of Guarantor's personal property including intangibles, accounts receivable, livestock, inventory, vehicles, goods, consumer goods and all other personal property of any kind whether now owned or hereafter acquired, as referred to in the section entitled "Breach or Default" of the attached Staff Leasing Agreement.

Any dispute between Hadley Collision Center Inc. and me shall be resolved in accordance with the Laws of the State of California and the United States of America and proper venue for any dispute.

Executed this 01 day of February, 2014.

Hadley Collision Center Inc.

By:

Print Name: Andrey Garibyan

Title:   President

Date Signed   01/02/2014

FMG Inc.

By:

Print Name: Mark Hassan

Title: President

Date Signed   01/02/2014

ADDENDUM

Return to Work Policy

Client Company agrees to provide a job for any employee assigned to Client Company that is injured and receives a light duty or
      full duty release, and the employee returns to Client Company's payroll.

_Client Acknowledgment_

Claim Deductible

Client shall pay to Hadley Collision Center Inc. a deductible of $ 500 per Worker's Compensation claim asserted by any
Assigned Employee. Said deductible shall include any medical expense, income expense or any other expense incurred by
Hadley Collision Center Inc. in the investigation and defense of any Worker's Compensation claim asserted by any Assigned
Employee, including, but not limited to, attorney fees.

_Client Acknowledgment_

Inconsistent Payrolls

There will be a $100 administrative fee assessed to all payrolls returned for which "zeroed checks" must be produced. *If any
particular employee does not have **payroll, they do not have coverage**.* Furthermore, if Client Company does not submit a
payroll for more than 45 days, yet has not formally terminated this agreement in writing, Client Company assumes the
responsibility for providing COBRA and similar state-law notices to affected workers.

_Client Acknowledgment_

Lost, Stolen or Replacement Checks

In the event an employee's check is lost or stolen, a replacement check can be issued and added to the *next* invoice. A credit will
not be applied until 60 days after the date of the lost/stolen/replacement check, and only if the check has not been cashed. A
stop-payment charge of $ _____ 0 _____ will be assessed.

_Client Acknowledgment_

Page 12 of 12 initial here

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS BRAD D. KRASNOFF, Chapter 7 Trustee | DEFENDANTS F M G, Inc. dba HADLEY TOW, a<br>California Corporation; MARK HASSAN, an individual;<br>ANDREY GARIBYAN, an individual; and DOES 1-50 |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>ZEV SHECHTMAN (State Bar No. 266280)<br>zshechtman@dgdk.com<br>DANNING, GILL, DIAMOND & KOLLITZ, LLP<br>1900 Avenue of the Stars, 11th Fl.<br>Los Angeles, CA  90067-4402<br>Tel. (310) 277-0077; Fax (310) 277-5735 | ATTORNEYS (If Known) |

| PARTY (Check One Box Only) | | PARTY (Check One Box Only) | |
|---|---|---|---|
| ☐ Debtor | ☐ U.S. Trustee/Bankruptcy Admin | ☐ Debtor | ☐ U.S. Trustee/Bankruptcy Admin |
| ☐ Creditor | ☐ Other | ☐ Creditor | ☒ Other |
| ☒ Trustee | | ☐ Trustee | |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
For Avoidance and Recovery of Unauthorized Post-Petition Transfers - 11 U.S.C. §§ 549 and 550;  For Turnover - 11 U.S.C. § 542; For Violation of Automatic Stay - 11 U.S.C. § 362

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☑[2] 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☑[1] 14-Recovery of money/property - other §§549 and 550

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief - imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 9,100,000.00 |

Other Relief Sought

B1040

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>HADLEY COLLISION CENTER, INC. | BANKRUPTCY CASE NO.<br>2:17-bk-17975-BR | |
| DISTRICT IN WHICH CASE IS PENDING<br>CENTRAL | DIVISION OFFICE<br>LOS ANGELES | NAME OF JUDGE<br>HON. B. RUSSELL |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>March 8, 2018 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>ZEV SHECHTMAN | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.